Geddes et als. vs. Cunningham et als.

No. 13,533.

ELIZA GEDDES ET ALS. VS. A. O. CUNNINGHAM ET ALS.

SYLLABUS.

1. Since the passage of Acts 106 and 140 of 1890, it has been competent to assess property for the purposes of taxation in the name of the person who, in the Parish of Orleans, appears upon the books of the Register of Conveyances to be the owner, whether such person be alive or dead, and this, irrespective of whether the lists provided for by Section 25 of .Act 106 be served as required or not.

2. Unless the owner of the property, whilst the rolls are open for correction, notifies the assessors of the death of the former owner, and otherwise complies with the law, he has no standing to complain that the property is assessed in the wrong name, nor will he be heard to complain of an error in the description so long as the property is reasonably identified.

3. The provisions of Sections 65 and 66 of Act 85 of 1888, authorizing the adjudicatee at a tax sale to be put in possession before the expiration of the twelve months allowed for the redemption of the property, are not obnoxious to Article 210 of the Constitution of 1879.

4. The legislation of 1890, referred to above, did not, and could not, affect the right of the owner of property to notice of the intended sale of such property for taxes, since such right was secured by Article 210 of the Constitution of 1879; the term "delinquent", as used in the article, being intended to apply to the owner at the time that the notice is issued. Nor is this question affected by the fact that the assessment may be validly made in some other name, that being a matter within the control of the legislature.

I N RE Eliza Geddes *et als.* Applying for *Certiorari,* or Writ of Review, to the Court of Appeal, Parish of Orleans, State of Louisiana.

*J. Zach Spearing* and *John Dymond, Jr.,* for Applicants.

*F. Rivers Richardson,* for Respondents.

### STATEMENT.

The opinion of the court was delivered by

MONROE, J.   The record which has been sent up and the briefs of the counsel present the following case for the consideration of this court, to-wit:

Upon June 4th, 1890, Mrs. Julia Robinson, wife of George D. Geddes, acquired by purchase certain improved real estate in New Orleans, which, for the present, may be designated as lot 4, in square 240, and her title was registered the next day.   Upon November 7th of the same year, Mrs. Geddes died, leaving her husband and six children (of whom five were minors) surviving her.   Her succession was duly opened, an inventory taken (which included the property in question), and her surviving husband was confirmed as natural tutor of the minor children. Within two or three years thereafter he married again, and appears to have taken up his abode near by.   The assessment upon said property for the year 1890 had been completed at the date of the purchase, and the taxes were paid upon said assessment as made, but whether before or after the death of Mrs. Geddes does not appear.   For the year 1891, the property was assessed in the name of Jos. A. Shakespeare and Mrs. Geo. D. Geddes, and the taxes were paid upon said assessment, either by George D. Geddes, or by Eliza Geddes, the daughter who, as we take it, had attained majority; the probability being that George D. Geddes had the payment made with money furnished for that purpose by her from her earnings as a school teacher.   For the years 1892, 1893 and 1894, the property was assessed to Mrs. Geo. D. Geddes, but the taxes were not paid, and the city treasurer, in 1895, issued a notice, addressed to Mrs. Geo. D. Geddes, and informing her that, in default of payment, he would proceed to sell the property for the city tax of 1892. This notice was served at the residence of Geo. D. Geddes, No. 1726 Erato street, upon "Mrs. Geo. D. Geddes, in person" (no doubt the sec-

ond wife). In the month of September, following, another notice was issued by the city treasurer, advising "Mrs. Geo. D. Geddes" that, in default of payment, he would proceed to sell the property in question for the city taxes of 1893 and 1894, which notice, according to the return filed in evidence, was served on "Mrs. Geo. D. Geddes, through Clem Geddes, her son, a person apparently above the age of fourteen years, residing at No. 1736 Erato street." The "Clem Geddes" thus referred to is the son of the first Mrs. Geddes, so that the service purports to have been made upon her through him. He was at that time, however, a minor, and the service appears to have been made, neither at the domicile of his father, which was 1722, 1726 Erato street, nor at the property in question, which is No. 1718 Erato street, but at the undertaking establishment of Geo. D. Geddes. Whether Clem Geddes was, at that time, employed in the undertaking establishment, or was there by chance when the service was made, we are not informed. Nor is there anything to show what disposition he made of the notice, which he does not remember ever to have received, and which Geo. D. Geddes does not remember to have received from him.

Thereafter, the city treasurer, claiming to proceed under the authority of Act No. 85 of 1888, advertised the property in question for sale (that is to say, he advertised a lot described as lot No. 26 in square 240, differing slightly in measurement from lot 4 in said square, as described in the title of Mrs. Geddes), and, upon March 30th, 1896, adjudicated it to Adolph Cartier, for the city taxes of 1892, 1893, 1894, amounting, with interest, costs, etc. to $84.40; and, upon May 2nd, 1896, he executed a notarial act pursuant to said adjudication. In November, 1896, Cartier "quit claimed" said property to Andrew O. Cunningham "without warranty, even as to the return of the price"; and, in December following, Cunningham applied to the Civil District Court for a writ of possession and obtained an order therefor. Thereupon, Eliza Geddes, and the other children of Mrs. George D. Geddes, deceased, applied for and obtained a writ of injunction upon a petition, in which they attack the title thus proceeded on, and pray that it be decreed null, on the grounds: (1) That the assessments upon which the property was sold were void, as having been made in the name of a predeceased person, and for lack of proper description; (2) That said property was not properly described in the advertisement; (3) That the provision of the Act of 1888, authorizing the purchaser to take possession before the expiration of the year allowed for the redemption of

the property, add a penalty not authorized by the Constitution, and that the proceeding of the defendant to take possession is therefore premature and illegal; (4) That the notice of the intended sale was not given as required by Art. 210 of the Constitution (of 1879).

To this the defendant, Cunningham, filed a plea of estoppel, and answered, asserting the validity of his title, and claiming, in reconvention, the revenues of which he has been deprived by means of the injunction. In the event of there being judgment against him on the question of title, he prays reimbursement of the amounts paid by him for taxes, etc. It was shown affirmatively on the trial that the assessors were not notified by the plaintiffs, or by any one for them, of the death of their mother, and that there had been no request that a change should be made in the name in which the property was assessed, or in the description of the property.

## OPINION.

### I.

THE ASSESSMENT. Section 25 of Act 106 of 1890, reads as follows, to-wit: "It is hereby made the duty of every taxpayer in the parish of " Orleans, to make return of his property duly sworn to, within ten " days after the list for such purpose shall have been left at his domicile " or place of business, and any owner, agent, administrator, or executor, " or other representative shall have no standing in court for a wrong " description (whether in name, measurement, or otherwise) unless " written complaint thereof was made during the period when the lists " are open for public inspection and correction; and the property of " such owners, agent, administrator, or executor, or other representative, " so assessed, shall be deemed properly described.

"Any assessment made in the name of a party deceased shall be good " and valid throughout the State, unless notification in writing of the " death, and whether or not the succession has been opened, and when " and where, shall have been made in due season to the assessor by the " heirs or parties interested. And in all cases, property assessed in the " name of the owner, as appears on the record of the mortgage or con- " veyance office at the date of listing shall be deemed properly as- " sessed."

Act No. 140 of 1890 provides that: "Section 1. * * In the assessment, " advertisement, and sale of property for the purposes of taxation, it

" shall be sufficient to so describe, as reasonably to identify it; such as " designating the tract or lot by the name by which it is commonly " known, or by the number or letter by which it may be usually desig- " nated upon the regular assessment rolls or upon an official or private " plan or sketch, or by giving the boundaries, or the names of the own- " ers on each side, or by the dimensions or the description, or the name " given in the act transferring the ownership thereof, or by such other " further, description as may furnish the means of reasonable identifica- " tion  *  *  *.

" Section 2.  *  *  *  that it shall be sufficient to assess and adver- " tise all property in the name of the person or persons, whether dead or " alive, who, at the time the assessment was made, appeared to be the " owners thereof, upon the books of the conveyance office in the parish " of Orleans, or in the recorder's office in the other parishes of the " State, but all property may be assessed in the name of the real " owner.  *  *  *

" Section 3.  *  *  *  that no assessment or tax sale shall be set " aside  *  *  *  for any error in the description or measurement of " the property assessed in the name of the owner, provided the property " assessed or sold can be reasonably identified."

The authority of the General Assembly to adopt this legislation is not challenged; but it is said: (1) that the obligations imposed on the taxpayer are conditioned upon the service "at his domicile, or place of business" of "the list", upon which he is to make his return; and (2), that the description by which the property in question was sold was insufficient, reasonably, to identify it.

It may well be said that the failure of the officer charged with that duty to serve the "list" excuses the taxpayer's failure to make the return, since the statute contemplates that the return shall be made on the list to be furnished; but neither the failure to serve the list, nor the failure to make the return, excuse the failure to assess the property, nor is it so pretended. And we are unable to discover any reason why, if the assessment is made, and the rolls are opened for correction, the ante- cedent failure, with respect to the service of the list and the return thereon, should relieve the taxpayer of the obligation to complain, when the rolls are opened for the purpose, of such assessment, if he has any complaint to make.

As to the Description. There can be no valid assessment of prop- erty which is not identified; hence, where the description is entirely in-

sufficient to identify the property it is immaterial whether the owner complains when the rolls are open or at any other time, since his failure to complain does not take the place of an assessment. Upon the other hand, there is a difference between the *absolutely* certain identification, which results from giving the christened and surnames of the present owner, with the correct spelling; the number of the lot, as stated in the title by which he acquired, with the exact measurement of the property; and a *reasonably* certain identification, which may be none the less satisfactory, though deficient with respect to one or more, or all, of the elements mentioned.

In the instant case, the property was assessed in the name of the mother of the plaintiffs in injunction, who was the owner at the time of her death, who still appeared upon the books of the conveyance office to be the owner, and from whom the plaintiffs acquired by inheritance. It is shown that she owned one lot, and but one, in the square, the boundaries of which, as given in the assessment and in her title, are the same; that the measurements, as so given, are substantially the same; and that the only difference, of any consequence, between the description in the assessments and that given in the title is the designation of the number of the lot, which, in the title, is given as 4, whilst in the assessment it is given as 26. Aside from this, it appears that taxes for one or more years were paid upon the assessments, as made, by some one representing the plaintiffs, and that no notice, written or otherwise, was given to the assessors, concerning the death of the former owner.

We are, therefore, of the opinion, that, under the circumstances of law and fact as presented, the plaintiffs in injunction cannot now be heard to complain of the assessments. Succession of Lacroix, 49th Ann. 1447; Smith vs. City, 43rd Ann. 730; Poland vs. Dreyfous, 48th Ann. 83; *In re* Wenck, 52 Ann. 376; Hood vs. City, 49th Ann. 1464; Hedding vs. City, 49 Ann. 983.

## II.

And we are further of opinion that this conclusion embraces the question of the sufficiency of the description for the purposes of the advertisement.

## III.

It is said that inasmuch as the Constitution of 1879 provided that the property should be sold for taxes without appraisement, and

"should be redeemable at any time for the space of one year, by paying the price given, with twenty *per cent.* and costs added", it was incompetent for the Legislature to increase the penalty thus imposed upon the delinquent taxpayer, but that the provisions of Act 85 of 1888 (sections 65, 66), authorizing the adjudicatee of property sold for taxes to take possession before the expiration of the year within which, under the Constitution, the property could be redeemed, have that effect, and hence, are in conflict with the Constitution, and are void. We are unable to concur with this view.

The constitutional provisions require a sale of the property; and a sale, whether with, or without right of redemption, entitles the vendee to the possession of the thing sold. It was, therefore, competent, if not obligatory, upon the General Assembly, in adopting legislation to carry those provisions into effect, to authorize the adjudicatee to go into possession at once.

## IV.

The next ground upon which the attack upon the title set up by the defendant in injunction rests, is, that the notice of the intended sale was not given as required by Article 210 of the Constitution (of 1879). The language of the Article referred to, upon the subject of notice, is as follows, to-wit: "* * * the collectors shall, without suit, and after " giving notice to the delinquent in the manner to be provided by law " (which shall not be by publication, except in the case of unknown " owners) advertise, etc." The "manner provided" by the law under which the sale in question was made, was "that the tax collector (shall) " should address to each taxpayer who has not paid all the taxes which " have been assessed to him on immovable property, a written or printed " notice," etc. (Section 50.)

" That the tax collector shall either deliver to each taxpayer in per- " son, or shall leave at his residence or place of business in the parish " of Orleans, one of said notices." (Section 51, Act 85 of 1888.) It will be observed that the only thing left by the Constitution to the Legislature, in the matter of the notice, was the "manner" in which it should be given, and that was regulated to the extent that notice by publication, except in the case of unknown owners, was prohibited. The intention of the framers of the Constitution, therefore, was plain and unmistakable; that, unless the delinquent was unknown, the notice should be served on *him* in the manner to be provided by law. Con-

ceding that the manner of the service, as provided by the statute, *i. e.*, in person, or by leaving it at the residence or place of business, was competent, the remaining question is, who is the *"delinquent,"* within the meaning of the Constitution?

This question has been, as we think, answered in the cases of Parish of Concordia vs. Bertron, 46th Ann. 358; and Adolph vs. Richardson, 52 Ann. 1159, in which it was categorically held that the delinquent is the person who owns the property at the time that the notice of the sale is to be given. And we have no reason to be dissatisfied with the doctrine thus announced. Upon the contrary, the more the proposition is considered, the more inconceivable it seems that the framers of two Constitutions (for the provisions of the present Constitution are similar to those of the Constitution of 1879) should display such solicitude upon the subject of notifying "delinquents" of the intended sale of property for taxes, only that such notice should be addressed to, and served upon those who have no interest or concern in the matter, either because they are dead, or because, being still alive, they never owned, or else have parted with, the property which is the subject of the notice. Nor is this question affected by the fact that the General Assembly has provided that the owner of the property who fails to notify the assessors of the death of the former owner and to avail himself of the opportunity which is afforded to have his property assessed in his name shall not thereafter be heard to complain that it is erroneously assessed in the name of some one else. The General Assembly might provide for the assessment of property without the use of any name whatever, and such assessment would be competent, provided the identity of the property was otherwise established. But that is because there is no higher law to the contrary. In the matter of the notice which must precede a sale for taxes, however, the Constitution has spoken, requiring such notice to be given to the owner at the time, and it is no answer to the charge that this has not been done to say, that the notice was given as the assessment was made.

In this case, the notices were addressed to Mrs. Geddes, who had then been dead nearly six years, and one of them purports to have been served upon her in person, whilst the other purports to have been served upon her through her son, Clem Geddes, who was then a minor. No doubt, the service of the notice first above mentioned was made upon "Mrs. George D. Geddes", but it was the second wife, and not the person to whom the notice was addressed. There is nothing in the legislation of

1890 which attempts to authorize or validate such a proceeding, and if any attempt of the kind had been made, it would have been ineffectual because in conflict with the Constitution. Upon the question of notice, the law stands as it did before that legislation was adopted, and the rule in Stafford vs. Twitchell, 33 Ann. 528, is still applicable, as are also the decisions in Hoyle vs. Athletic Club, 48 Ann. 879; Hodding vs. City, 48 Ann. 982; Hood vs. City, 49 Ann. 1465; Cucullu, Administrator, vs. Lumber Company, 49 Ann. 1445; Genella vs. Vincent, 50 Ann. 956.

For these reasons, it is ordered, adjudged and decreed that the judgment herein rendered by the Court of Appeal for the Parish of Orleans be annulled, avoided and reversed, and that the judgment of the District Court be affirmed, all costs to be paid by defendant, appellant in injunction.

Rehearing refused.