No. 13,838.

WILLIAM H. HOWCOTT VS. CITY OF NEW ORLEANS.

SYLLABUS.

1. Where a title to real estate is vested in two persons, who hold in indivision, and in equal proportions, the whole property may be assessed to both owners without specification as to their respective interests, though it 's otherwise when each owns a designated portion of the property or they own unequal proportions; and, in the former case, if the assessment is regular as to one of the co-owners, he can have no reason to complain that it is defective as to the other, since such defect can work him no prejudice.

Howcott vs. New Orleans.

2. The doctrine that proceedings conducted against and in the name of one
who is dead, and which lead to the sale of property for taxes, convey no
title, is inapplicable where the holder of the recorded title is living. In
such case, neither the assessor nor the collector is bound to go beyond the
recorded title in search of the owner.

APPEAL from the Civil District Court, Parish of Orleans.—
St. Paul, J.

*Kernan & Gowland,* for Plaintiff, Appellant.

*William Winans Wall,* for Grace F. Chamberlain and Heloise
Chamberlain, Heirs of Edward Chamberlain, Warrantors, Appellant.

*Frank B. Thomas,* Assistant City Attorney, and *Samuel L. Gilmore,*
City Attorney, for Defendant, Appellee.

The opinion of the court was delivered by

MONROE, J. The petition in this case alleges that the defendant is
slandering plaintiff's title to two squares of ground in this city by
having registered in the conveyance office pretended tax adjudications
thereof, to itself, which adjudications are void, and of no effect, for
the reasons:

1. That they are predicated upon assessments in the names of
persons who were not the owners of the property.

2. That the advertisements of the sales contained all the vices and
defects contained in the assessments.

3. That the notices of the intended sales, required by law, were
not given.

4. That the city has admitted, and is estopped to deny, the nullity
of said adjudications, by assessing and collecting the taxes for subse-
quent years.

We find the following in the record, to-wit:

"It is admitted that the plaintiff, W. H. Howcott, acquired by
purchase the interest of Grace F. Chamberlain *et als.,* who are the
heirs of the late Charles M. and Edward Chamberlain, in the property
in controversy herein, as alleged in the petition, and is in possession
thereof; that Grace F. Chamberlain *et als.* were the heirs of the late
Charles M. Chamberlain, who died intestate on September 13th, 1862,
and Edward Chamberlain, who died in 1894, and that the said Charles

M. and Edward Chamberlain were the owners of said property by inheritance from their father, Nathaniel Chamberlain, who died in 1839, and who acquired said property by purchase from the New Orleans Canal and Banking Company in 1833; that said property was adjudicated by the City of New Orleans for taxes alleged to be due for the years 1880 to 1889, both inclusive, under assessments and advertisements made in the name of C. and E. Chamberlain, the said adjudications having been made on May 7th, 1894, and duly registered in the conveyance office.

"This admission is made without in any manner admitting the validity of said adjudications.

"That the city bases her adjudication and sale on a notice served on one J. C. Vidou, on April 7th, 1893; that taxes have been paid by the present plaintiffs, as per tax receipts annexed and made part hereof; that the property in controversy herein was adjudicated by the State Tax Collector for alleged State taxes for years prior to 1879, under the act of the Legislature No. 82 of 1884, to J. C. Vidou, under assessments made to C. and E. Chamberlain; that J. C. Vidou, on May 27th, 1893, sold to John Baltz; that neither Vidou nor Baltz ever paid the State and city taxes due subsequent to 1879, which were assumed in their deed from the tax collector; that subsequent to the city's adjudication to herself, on May 7th, 1894, the title of the said John Baltz and J. C. Vidou was, on the suit of Grace F. Chamberlain *et als.*, annulled and cancelled by judgment of the Civil District Court.

(Signed)    "KERNAN & GOWLAND,
*"Attorneys for Plaintiff.*

"(Signed)    FRANK B. THOMAS,
*"Assistant City Attorney."*

"INSTRUCTIONS TO THE CLERK AS TO THE TRANSCRIPT.

"The clerk will copy in the transcript the following documents and no others, to-wit: (1) The petition; (2) the answer; (3) the judgment rendered January 3rd, 1901; (4) the agreement of counsel, filed January 15, 1901, and marked 'X. Y. Z.'; (5) motions and bonds of appeal.

"Signed)    KERNAN. & GOWLAND,
*"Attorneys."*

There are no pleadings or documents and no evidence in this record other than as thus specified in the instructions given by the plaintiff's attorneys to the clerk, and the certificate of the clerk reads: "That the foregoing nine pages do contain a true, correct, and complete transcript of all that portion of the proceedings had, documents filed, and evidence adduced, upon the trial of the cause * * * and now in the record thereof * * * required to be included therein, as per type-written instructions of Messrs. Kernan & Gowland, attorneys for plaintiffs and appellants, copied in said transcript on page 9."

In the District Court, there was judgment for the plaintiff, "setting aside the tax adjudications and tax sales, in the name of J. C. Vidou, Jr., to the City of New Orleans, evidenced by two acts of sale, both executed before J. D. Taylor, notary, on May 14th, 1894, and registered in the conveyance office in this city in book 151, folios 440 and 441, respectively, but in so far only as the same affects the one undivided half interest formerly belonging to Charles M. Chamberlain in the following described properties" (giving the description); "that in all other respects plaintiff's demand be rejected, and that the defendant pay all the costs of the suit." From this judgment, plaintiff, as also Grace F. and Heloise Chamberlain, alleging an interest as warrantors, have appealed.

It may fairly be inferred, from the admission of the counsel, that the property in question was inherited by Charles M. and Edward Chamberlain, in indivision, and in equal proportions, and that, from the date of such inheritance, in 1839, it was assessed to C. and E. Chamberlain. The omission of the initial "M" can hardly be considered material, under the circumstances, and the assessment, as thus made, was undoubtedly valid up to the date of the death of Chas. M. Chamberlain, in 1862, since the whole property was to be assessed, each of the two heirs owned exactly the same interest as the other. and the assessment in the two names sufficiently indicated that fact. If their inheritance and ownership had been several, or had been in unequal proportions, instead of by "moities;" that is to say, if each of them had owned designated portions of the property, the assessment of the whole, together, would have been bad, for the reason that, in such case, the property of the one would have been distinct from, and might have been more, or less, valuable than that of the other. But, inheriting and owning as they did, each an undivided half interest in the whole, the assessment of the whole to both could have operated to

the prejudice of neither. And, for the same reason, so long as the property continued to be assessed to the owner, in indivision, of an interest equal to an undivided one-half, and to not less than one other person, and so long as the assessments, advertisements and notices were regular as to such owner, it could have been a matter of no concern to him whether, as to the remaining interest, they were good or bad, since, he could not have been made liable for more than his share of the taxes. It is admitted that the property was sold by the State, under Act 82 of 1884, for taxes, due prior to 1880, and we must presume that notice of the pretended sale was given to those who, within the meaning of Article 210 of the Constitution of 1879, were to be considered the owners. If there was a failure in this respect as to the interest which had been owned by C. M. Chamberlain, it did not effect the sufficiency of the notice, presumably, given to E. Chamberlain, and we are of opinion that those claiming under the latter can not avail themselves of such failure any more than of the alleged defect in the assessment of the interest which had belonged to C. M. Chamberlain.

Whilst the property stood, by recorded title, in the name of the party to whom it was adjudicated by the State, the city, proceeding contradictorily with such apparent owner, adjudicated it to herself. It is now claimed that the apparent title of the adjudicatee from the State was subsequently annulled in an action brought by the present plaintiffs, and that it must, therefore, now, be held that such adjudi-catee had no capacity to receive the notice, and, to that extent, represent the owner for the purposes of the proceedings taken by the city, but that it was the duty of the city to go behind the recorded title and to deal with the property as though the title were still vested in the Chamberlains, and, in support of this view, we are referred to the opinion of this court in the case of Geddes vs. Cunningham, 104 La. 306. That opinion was not, however, intended to bear, nor do we think it properly susceptible of, the interpretation which is thus placed upon it. The court was then dealing with a case in which the registered owner had been dead for nearly six years, and her succession had been opened in the parish where the property in question was proceeded against, and where it was sold, for taxes, after notices purporting to have been served on the deceased, personally, and through a minor son, who survived her, and the language of the opinion was applied to those facts, but the court did not intend to announce that,

where the holder of the recorded title is living, it is the duty of the tax collector to pass upon the validity of his title and to go behind it in search of any other owner. The distinction between the two, classes of cases is recognized in the opinion in the case of Millaudon *et als.* vs. Gallagher, 104 La. 715, in which, after citing a number of cases in which it has been held that proceedings culminating in the sale of property and conducted in the name of a dead man convey no title, it was said: "In the cases to which we are referred by the counsel for the defendant, as supporting a "different view" (citing them) "there were living persons, or existing entities, to represent the names in which the property was assessed, and, those names appearing on the books of the conveyance office, it was held that it was no part of the duty, as it was not within the power, of the assessor and collector to determine, as between such apparent owners and other claimants, in whom the legal title was vested."

In the admission of counsel upon which the instant case had been submitted, it is said: "That taxes had been paid by the present plaintiff, as per tax receipts, annexed and made part hereof;" but the counsel for plaintiff, in giving directions to the clerk as to what was to be included in the transcript, failed to mention any tax receipts. and we have, therefore, no information, as to taxes paid by the plaintiff, other than is contained in the admission above quoted. Beyond this, we rather infer from the record that no taxes have been paid upon the property in question for many years, save the, probably, trifling, amount which was realized by the State from the adjudication to Vidou. That individual, who purchased sometime between 1884 and 1893, assumed, but did not pay, the taxes for 1880 and subsequent years, and, in 1893, as soon as he received notice of the intention of the city to sell for its taxes, sold the property to Baltz, and, thereafter, Baltz appears to have allowed the heirs of Chamberlain to obtain judgment annulling the title by him and to recover the property, but it does not appear that either the State or the city were parties to the suit in which that judgment was rendered or that any one has paid the taxes due to either.

Judgment affirmed.