58 So.2d 573 (1952)
DOLL
v.
MONTGOMERY, State Tax Collector.
No. 19883.
Court of Appeal of Louisiana, Orleans.
April 28, 1952.
*574 Delvaille H. Theard, New Orleans, for plaintiff and appellant.
Louis B. Porterie, New Orleans, for defendant and appellee.
McBRIDE, Judge.
Plaintiff seeks an injunction against the State Tax Collector for the Parish of Orleans, to enjoin, on various grounds, the sale of certain immovable property for taxes claimed to be due the state for the years 1934 through 1947. One of the grounds advanced for the issuance of the injunction is that plaintiff had never received from the tax collector the notice of delinquency which is essentially required by law. At the time the suit was filed, the property was being advertised for tax sale.
The court below issued a temporary restraining order, enjoining and prohibiting the State Tax Collector, his deputies, agents, employees, and representatives from offering for sale, until the further orders of the court, the property of plaintiff, and ordered the tax collector to show cause why a preliminary injunction should not issue as prayed for.
When the rule for the injunction was called for trial, it was continued without date, and subsequently, on motion of plaintiff, the case was tried on its merits, and after hearing the evidence the court below dismissed plaintiff's suit and denied injunctive relief. Plaintiff has taken a suspensive appeal from the judgment.
The testimony reflects that Giuseppe Sciaccaluga, the original owner of the property, died in 1914, and his heirs were sent into possession of the property on January 6, 1915, by judgment, which was placed of record in the Conveyance Office for the Parish of Orleans. Notwithstanding the demise of Giuseppe Sciaccaluga and *575 the registration in the conveyance office of the judgment in his succession placing his heirs into possession, the assessment of the property for each year was continued in Sciaccaluga's name until 1934, when, under the assessment in his name, the property was adjudicated to the state for taxes of that year. The property has been continuously assessed in the name of Giuseppe Sciaccaluga up to the present date. In 1947, Warren Realty Company, Inc., acquired the rights of the heirs of Sciaccaluga in the property.
While the property was under the proprietorship of Warren Realty Company, Inc., that corporation, seeking to avail itself of Act 113 of 1938, endeavored to have the State Land Office cancel the adjudication of the property to the state for the 1934 taxes, on the ground that the adjudication was null and void. The State Tax Collector and the assessor declined to approve the application submitted by Warren Realty Company, Inc., to the State Land Office, and a mandamus suit ensued, by means of which Warren Realty Company, Inc., sought to force the State Tax Collector and the assessor to approve its application for the cancellation of the 1934 tax sale. The case ultimately reached this court, and we denied the relief requested by Warren Realty Company, Inc. See State ex rel. Warren Realty Co. v. Montgomery, La.App., 43 So.2d 33.
In March 1950 Warren A. Doll, who had in the meantime acquired the rights of Warren Realty Company, Inc., in the property, filed suit against the State of Louisiana through the State Tax Collector for the Parish of Orleans, under Act No. 73 of 1914 (now LSA-R.S. 47:2227), praying that the 1934 adjudication to the state be annulled. In that suit judgment was rendered decreeing that the 1934 assessment in the name of Giuseppe Sciaccaluga, as well as the tax adjudication to the state based on the assessment, were null and void and without effect. The judgment further ordered the erasure and cancellation of the adjudication to the state from the conveyance records of the Parish of Orleans.
It is conceded that Doll received from the collector formal notice of the delinquency of taxes for the years 1948 and 1949, and he paid the taxes for those years and also for 1950. The tax collector, early in June 1951, commenced advertising, in a daily newspaper published in New Orleans, that he would offer the property for sale at the principal front door of the courthouse, on Friday, July 6, 1951, at 11 o'clock, a. m., to enforce collection of the state and parish taxes due thereon for the years 1934 through 1947, both inclusive. The advertisement, insofar at it applies to Warren A. Doll's property, describes the tax debtor, the taxes due, and the property as follows:

"SCIACCALUGA, G., OR DOLL,
 WARREN A.
Total Tax, 1934 ..........$32.80
Total Tax, 1935 .......... 32.80
Total Tax, 1936 .......... 32.80
Total Tax, 1937 .......... 32.80
Total Tax, 1938 .......... 32.80
Total Tax, 1939 .......... 36.00
Total Tax, 1940 .......... 36.00
Total Tax, 1941 .......... 36.00
Total Tax, 1942 .......... 36.00
Total Tax, 1943 .......... 36.00
Total Tax, 1944 .......... 36.00
Total Tax, 1945 .......... 36.00
Total Tax, 1946 .......... 36.00
Total Tax, 1947 .......... 36.00
Total Tax, 1948 .......... 36.00
Total Tax, 1949 .......... 36.00

"A certain lot of ground and improvements thereon in the Second District of the City of New Orleans, in square bounded by Decatur, Jefferson, Chartres and Toulouse Streets, designated as Lot No. 3 in Square No. 26; said Lot No. 3 measures 17.08 feet front on Decatur Street by depth of 76 feet."
In his written reasons for judgment, the trial court comprehensively discussed all issues in the case. It is conceded that the tax collector did not, prior to proceeding to advertise the property for sale for delinquent taxes, furnish Doll with the written or printed notice provided for by Const.1921, Art. 10, § 11, and Act No. 170 of 1898, as amended by Acts Nos. 235 of 1928 and 194 of 1932, LSA-R.S. 47:2180.
*576 The contention that no valid tax sale could be had, for the reason that the notice had not been served upon Doll as a prerequisite, was disposed of by the judge, according to his reasons, thus:
"Accordingly there will be judgment dismissing the plaintiff's application for an injunction, but in view of the fact he contends he did not receive the 20-day notice required by law, this judgment will not become executory until twenty days after its finality in order to give the plaintiff the delay in which to make payment."
As we have already stated, plaintiff urges several grounds for the injunction, but we need concern ourselves with but one of those grounds, i. e., lack of the twenty-day notice. We believe that the question of notice is first and paramount, as it was said by the Supreme Court, in Recker v. Dupuy, 161 La. 392, 108 So. 782, 784:
"* * * Notice of delinquency and of the intention to sell is an important step in the sale of property for taxes, and is jurisdictional in its nature. * * *"
Const.1921, Art. 10, § 11, provides in part that there shall be no forfeiture of property for the nonpayment of taxes, but at the expiration of the year in which the taxes are due, the collector shall, without suit, and after giving notice to the delinquent in the manner provided by law, advertise for sale in the official journal the property on which the taxes are due, in the manner provided for judicial sales. The type of notice and the manner of service of the same upon the delinquent tax debtor are provided for in § 50 and § 51 of Act No. 170 of 1898, as amended by Acts Nos. 235 of 1928 and 194 of 1932, LSA-R.S. 47:2180. The notice must be addressed to the taxpayer who has not paid all his taxes which have been assessed to him on the immovable property, notifying him that the taxes must be paid within twenty days after service or mailing of the notice, or that the property will be sold according to law, and in the Parish of Orleans the notice may either be sent by registered mail or may be served personally on the taxpayer or at his domicile.
The owner at the time the proceedings to sell are commenced is the "delinquent" entitled to the notice, and this, regardless of to whom the property may be assessed. The notice is sacramental and must be given before steps are taken to proceed against the property, and in the absence of a valid notice the sale is a nullity. Di Giovanni v. Cortinas, 216 La. 687, 44 So.2d 818; Schwing Lumber & Shingle Co., Inc., v. Board of Commissioners of Atchafalaya Basin Levee District, 202 La. 477, 12 So.2d 235; Federico v. Nunez, 173 La. 957, 139 So. 18; Kivlen v. Horvath, 163 La. 901, 113 So. 140; Recker v. Dupuy, supra; Jones v. Curran, 156 La. 1055, 101 So. 415; Adsit v. Park, 144 La. 934, 81 So. 430.
Notwithstanding that a tax sale is a nullity for failure of notice of delinquency, its illegality may be cured by the prescription of three (now five) years. Const. 1921, Art. 10, § 11; Progressive Realty Co., Inc., v. Levenberg, 177 La. 749, 149 So. 444; Board of Commissioners for Atchafalaya Basin Levee District v. Sperling, La.App., 8 So.2d 380.
Unless and until the illegality resulting from failure to give the notice is cured by the five years prescription, the sale remains a nullity and the owner may bring proceedings to annul the sale. As a corollary, it must be true that he may enjoin the sale before it takes place.
An injunction may be maintained against a sale for taxes where the property is erroneously assessed. Said the Supreme Court in Nylka Land Co., Ltd., v. City of New Orleans, 165 La. 786, 117 So. 918, 919:
"* * * As the owner of the property in such a case would have a right of action to annul the sale at any time within three years after it is made, he must also have the right to stop the sale at any time before it is made."
See also Moore v. Dennis, 34 La.Ann. 1250.
Why, we ask, should there be a different rule where the owner's complaint is that the collector has failed to give the statutory *577 notice of delinquency before commencing the proceedings to sell?
Defendant takes the position that the notice was not necessary, because Warren A. Doll had actual notice that the taxes were due and unpaid. Defendant directs attention to that part of the reasons for judgment wherein it is set forth that the court granted Doll a period of twenty days to pay the taxes. We agree that Doll did have an abundance of actual notice and knowledge of the state of affairs of the taxes, and made calls to the office of the tax collector with reference thereto, on one occasion being furnished with an itemized statement of the amounts due.
But the taxpayer is entitled to be served with the written notice setting forth that the taxes must be paid within twenty days or that the property will be sold according to law. We know of no law providing, or any authority holding, that the informal knowledge in Doll, or the twentyday indulgence by the court, has the effect of curing the defectiveness in the proceedings arising out of the failure of the tax collector to give the formal notice in accordance with the constitutional mandate.
Indeed, in Recker v. Dupuy, supra [161 La. 392, 108 So. 784], we find this language:
"But defendants argue that we should not annul the tax sales on the ground that, before making them, the tax collectors charged with the duty of giving notice failed to give the notices required by law. Defendants say that plaintiffs had knowledge of the fact that their taxes had not been paid, and that at least one of them corresponded with reference to their payment, prior to the making of the first sale, and hence, they argue, in effect, that plaintiffs would not have been placed in a better position had they received notice from the state and from the municipal tax collectors. The answer, however, is that the informal knowledge which plaintiffs had does not supply the place of the notice required by the Constitution and the law."
The reason for the strict application of the rule that the formal notice must be given results from a realization that if that rule be relaxed it will result that in every case the courts would have to ascertain from the evidence just what knowledge the taxpayer may have had, and to determine in each case whether that knowledge should be considered as sufficient. The title to real estate might well rest upon the question of whether a taxpayer had heard informally that his property was about to be advertised. It is possible that the tax collector might meet the taxpayer on the street and tell him that his property was about to be advertised. Should the taxpayer deny that the tax collector had given him this information verbally, then the validity of the sale of real estate might depend upon the veracity of the tax collector as opposed to that of the tax debtor. We think it a very sound rule that the requirement of the formal notice should not be relaxed.
Since the necessary notice of delinquency was not given, there can be no sale of the property, as proposed by the State Tax Collector, at this time.
Accordingly, the judgment appealed from is reversed, and the matter is now remanded to the court below, and the trial judge is hereby directed to issue the injunction sought by plaintiff.
Reversed and remanded.
REGAN, J., dissents with written reasons.
REGAN, Judge (dissenting).
I respectfully dissent.
The ratio decidendi of the cases cited in the majority opinion relative to "notice" is simply that an adjudication made to the state without the delinquent taxpayer receiving the formal notice which the majority opinion stresses, may be annulled and set aside when it is proven that the taxpayer did not receive such a notice before his property was sold, which is conceded; however, in the author's opinion it does not follow as a corollary (as the majority opinion states) that the taxpayer may enjoin a sale that has not yet occurred when the record reflects an abundance of proof that he did have actual and personal notice of his delinquency. The reason for the rule of *578 "notice" is that a delinquent taxpayer must have an opportunity to rectify his delinquency before he is deprived of his property. When the reason for that rule is fulfilled in every conceivable respect prior to the sale then the reason for the rule no longer exists and that is exactly this case.
The whole background of this litigation exemplifies the very obvious fact that plaintiff, in reality, is not interested in notice, otherwise the taxes due on this property from 1935 through 1947 would have been paid. What plaintiff seeks is to circumvent the payment of the taxes due for these years by virtue of his plea of prescription or the invalidity of the assessment.
Since the majority opinion fails to encompass or decide the real issues presented by the pleadings and briefs of counsel and the reasons for judgment of the court, a qua, the author feels that it is encumbent upon him to discuss these issues in order to present a more composite picture of his dissent.
The plaintiff endeavored to obtain a permanent injunction to restrain the State Tax Collector for the Parish of Orleans from selling certain immovable property to satisfy delinquent and unpaid taxes due the State for the years 1935 through 1947, totalling approximately $1,000.
The property was acquired in 1886 by G. Sciaccaluga, in whose name it was assessed from that date until 1950, notwithstanding Sciaccaluga died in 1914 and his children were put in possession by judgment duly registered. Plaintiff acquired the property from the heirs through several distinct conveyances.
In 1935 the property was adjudicated to the State for unpaid taxes of 1934, assessed in the name of G. Sciaccaluga (deceased). The property was likewise assessed in the name of G. Sciaccaluga for the subsequent years (1935 to 1950).
In 1950 plaintiff instituted suit to annul the adjudication to the State for want of legal notice to the heirs. Judge Hamlin annulled both the assessment and the tax sale thereunder. From that judgment no appeal was taken.
The defendant Tax Collector then notified plaintiff that he would advertise and sell the property for the unpaid taxes due the State for the years 1935 through 1947. Plaintiff paid the taxes due for the years 1948-49-50, on the assumption that the taxes for the other years were cancelled by the prescription of three years.
Plaintiff contends (and this is the true issue of the case) that Judge Hamlin's judgment cancelling the assessment for 1934 is res adjudicata and operated to cancel and annul all subsequent assessments; or, if the assessments were valid, then the taxes for the subsequent years (except XXXX-XX-XX) were cancelled by prescription of three years.
The defendant maintains that only the assessment and taxes for the year 1934 are res adjudicata because only they were involved, and that the Court has the right now to pass upon the validity of the assessments for the subsequent years. In this the defendant is correct because only those issues raised in any litigation become res adjudicata. R.C.C.Art. 2286, Lloveras v. Reichert, 197 La. 49, 200 So. 817.
With reference to the validity of the assessments in the name of the deceased owner, the defendant cites Sections 25 and 61 of Act No. 170 of 1898, LSA-R.S. 47:1965, 47:1955 reading as follows: 
LSA-R.S. 47:1965: "Any assessment made in the name of a party deceased shall be good and valid throughout the state unless notification in writing of the death and of whether or not the succession has been opened and when and where, shall have been made in due season to the assessor by the heirs or parties interested. * * *" (Italics ours.)
LSA-R.S. 47:1955, which combines provisions of Sections 59 and 61 of Act No. 170 of 1898, reads as follows:
"After property has been adjudicated to the state, it shall be assessed, during the period allowed by existing law for its redemption, in the name of the person to whom it was assessed at the date of the sale. During the period allowed *579 by existing law in which the owner of the property is permitted to redeem it, the tax collector shall not again sell the property under the continued assessment aforesaid while the property remains in a condition of forfeiture to the state, but the assessors of the several parishes of the state shall designate such property as adjudicated to the state, and list and assess it separately from all other property.
"In the parish of Orleans, property adjudicated to the state shall be listed separately by squares or subdivisions in the same manner as other property not in a state of forfeiture.
"The continued assessment, or any erroneous assessment in the name of the former owner, or any action of the tax collector in receiving taxes under the continued assessment, or other erroneous assessment, and any continued possession of the property by any former owner during the period allowed by law for the redemption of the property, shall not be considered or construed by any court of this state as an estoppel of the state from claiming the property, or taking physical possession thereof, after the adjudication of the property to the state and during the period of time allowed by law for the redemption of the property, nor as affecting in any way the title of the state to the property, or to its right of possession thereof."
Hence, it is clear that the assessment in the name of the deceased owner was valid and proper, in the absence of notice that judgment putting heirs in possession was served upon the assessor. See Federico v. Nunez, 173 La. 957, 139 So. 18; Geddes v. Cunningham, 104 La. 306, 29 So. 138.
With reference to prescription of three years cancelling taxes from 1935 through 1947, I observe that under LSA-R.S. 47:1955 the defendant tax collector is forbidden to
"* * * sell the property under the continued assessment aforesaid while the property remains in a condition of forfeiture to the state * * *."
As the adjudication to the state in 1935 for the taxes of 1934 was not annulled or set aside until 1950, the defendant was forbidden to sell the property under the assessment for the years 1935 to 1950. Since three years have not elapsed since 1950, the taxes for those years have not prescribed. The taxes for the years 1948-49-50 were paid, leaving unpaid only those taxes for the years 1935 through 1947.
Under the doctrine that prescription does not run during the period within which there can be no action (contra non valentem agere nulla currit praescriptio), prescription does not run against taxes which, by LSA-R.S. 47:1955, cannot be collected during the period that the property stands adjudicated, but which are effective against the property when that property is redeemed. State ex rel. Salomon v. City of New Orleans, La.App., 174 So. 692.
We should not be concerned here with the lack of notice to the Sciaccaluga heirs of the tax sale in 1936 for the taxes of 1934, since that sale has already been annulled by Judge Hamlin and no appeal was taken therefrom. Nor should we be concerned with notice vel non for the contemplated sale for taxes for the years 1935 through 1947, which plaintiff endeavors to enjoin. The issue is not the validity vel non of a completed tax sale for those years for lack of notice, because the sale has not yet occurred. That plaintiff has had ample notice of the sale he seeks to enjoin is best evidenced by this suit to enjoin such sale. Also see the cases of Warren Realty Co. v. Montgomery (State Tax Collector for the Parish of Orleans), La.App., 43 So.2d 33, and Doll v. State of Louisiana, No. 296-119 of the Docket of the Civil District Court, both of which involve the same property as is involved herein. If plaintiff had no notice he would not now be exerting his efforts to enjoin it. In fact, the record is replete with evidence that plaintiff was personally informed of the impending sale by the defendant who, for the guidance and benefit of plaintiff, calculated the amount of money necessary to satisfy the taxes and prevent the impending sale.
It may be well to again reiterate at this point that this is not a suit by a property *580 owner to set aside or to annul an adjudication made to the State for unpaid taxes based on lack of notice of the delinquency by the Tax Collector to the delinquent taxpayer; but the suit represents an effort by plaintiff to enjoin a sale that had not yet occurredon the principal ground that the taxes were invalid or prescribed and not (except parenthetically) on the theory that plaintiff was never properly informed of his delinquency.
The real premise, as observed hereinabove, upon which plaintiff endeavors to enjoin the sale is that the assessments and taxes for the years in question are invalid or prescribed. Since the assessments were valid and the taxes not prescribed, plaintiff can only prevent the sale by paying the taxes for those years. The trial judge has given him 20 days to pay them in default of which defendant may proceed to advertise and make the sale according to law. In the absence of any other notice, what better notice could plaintiff receive than the judgment of court in a proceeding instituted by plaintiff to enjoin the contemplated sale than by giving him 20 days to pay his delinquent taxes and thus prevent the impending sale.
The majority opinion concludes that "the judgment appealed from is reversed, and the matter is now remanded to the court below, and the trial judge is hereby directed to issue the injunction sought by plaintiff." The obvious result of remanding this case is that the tax collector will again reiterate and notify the plaintiff "formally" that his taxes are delinquent and should be paid, a fact which he has known for years, as is reflected by three separate and distinct law suits, in two of which he was the plaintiff, Doll v. State of Louisiana, No. 296119 of the Docket of the Civil District Court, decided by Judge Hamlin and Doll v. Montgomery, State Tax Collector for the Parish of Orleans No. 19883 of the Docket of this Courtthe present suit, and in the other he was the executive officer of the plaintiff corporation, Warren Realty Co. v. Montgomery (State Tax Collector for the Parish of Orleans), La.App., 43 So.2d 33. In view of these undisputed facts does the remanding of this matter serve the ends of justice? I think not, it occurs in consequence of the majority opinion's observance of a sheer technicality which, in the final analysis, only frustrates the litigants and, in the ultimate, will cause this case to move to and fro from the Court of Appeal to the District Court and back again. Therefore, in justice to all concerned, this case should have been decided on the real issues which were presented and as I have discussed hereinabove.
I am of the opinion that the judgment of the trial court was correct and should be affirmed.